Thank you, Your Honor. Good morning, and may it please the Court. I represent Christopher Alan Edwards, the appellant in this case. My name is Stephen Wright. We are asking the Court to review Mr. Edwards' conviction and sentence under three main challenges. First of all, we're challenging the chain-of-custody evidence regarding some cocaine that was recovered from a traffic stop. Second, we are preserving an issue regarding what the jury should be instructed with regards to Mr. Edwards' personal knowledge of all drugs recovered, but also specifically regarding the recovered fentanyl, because that was an issue where the evidence was not established sufficiently, and so that did establish the plain error necessary on that issue with particular regards to the fentanyl. And lastly, we are objecting and asking this Court to reverse and vacate Mr. Edwards' sentence. First of all, we have an objection to his career offender, the findings underlying that career offender sentence. And more importantly, we are objecting to the reasonableness of his sentence because the Court relied on an improper factor, specifically statements that the Court made regarding Mr. Edwards' co-defendant and how she was a victim in that case, which was contrary to the record and suggested that the Court was relying on an improper factor. I'm going to start with the last issue first. What was troubling in the Court's statements were that were multiple statements that was an aggravating factor that Mr. Edwards was victimizing his co-defendant, Chloe Johnson, which was contrary to the record. It was established that she saw himself or she saw herself as his equal partner. She was solely responsible for the heroin customers and the heroin dealing. That was something that she clearly said was that they had separate customer bases and separate, they were, they divided responsibility. Second, her desire to be a trafficker herself was clearly established. He asked her, this was in her testimony, he asked her, and she willingly and eagerly, knowing multiple people she could sell to, knowing that she could make a good profit, decided that she would do that herself. And so that's what she did. And she was found to be, in the PSR, an average is that it sees her as, and it comes very close to, and I don't want to say, a sort of sexist attitudes towards her as not quite the equal partner she claimed herself to be. And this was a significant basis for an aggravating factor. And so although this Court's precedent is very clear that a sentence below a guideline range is almost unreviewable, because of the reliance on the improper factor, we would ask that that sentence is not the typical sentence that this Court generally reviews. Did the defendant object at all to what the judge was saying? I think there, I don't think there is a specific objection to the reliance on the, on Chloe Johnson as a victim of Mr. Edwards. But there was a request for a mandatory minimum sentence of 180 months, and so his, I don't think he has a specific objection. Well, if the judge had been alerted that the defendant disagreed with what your characterization, then the judge might have either clarified what she meant, or that I would do the same thing regardless, or it might have changed. You never know. But I just wondered if it, if the whole issue had been broached with the judge. It sounds like no. That's a valid question, and my recollection of the record is that there is no specific objection to those statements. And storage is the tiebreaker here, right? Because the drugs were stored with her to protect him and his family, and he imposed on her to do that. Wasn't that a tiebreaker with the district court? Well, imposed is, I think, perhaps overstating it. Or did the district court use to describe the storage arrangement? Correct. But in terms of what the actual record established, she said he had a key, he came and went, she had access to the drugs, he had access to the drugs. It was, according to her own testimony, an equal arrangement. And as far as it being imposed on her, it was perhaps his idea. But imposed is, again, gets into this improper statement of the record, where she is an equal participant, she is profiting from this, she is supporting her own habits, she has her own customers. Imposed is overstating. Moving on to the question of the instruction regarding Mr. Edwards' personal knowledge, and specifically as it relates to the fentanyl finding of the jury. First of all, we do want to start by saying that this issue is preserved. Mr. Edwards did object to the instruction involving language regarding the precise nature of the controlled substance, and so we are not going to go into that. But these were joint instructions in the end submitted to the judge? There was a joint instruction that was submitted, but there was a note at the top that said defendant objects to this instruction. And this is on the final joint instructions? I'm misunderstood by the briefs. These are... Final joint instructions said that.  Unfortunately, the discussion of the instructions does not occur on the record. And so we would point to the fact that there is no indication that there was a knowing waiver of his rights with regards to that objection. And so we are asking the Court to review for point of error. I'm driving at a fact here. Yes. I understood, I think, from the briefs that the final set of joint instructions didn't note any objections on them at all. The final set of joint instructions submitted to the judge. Is that true? And if you don't know, it's fine. I'm going to have to claim ignorance. Okay. But my recollection is that there was a set of joint instructions with the objection noted. There were the final instructions which were given to the jury, which did include this instruction. Okay. That's what I thought. Okay. Then, yes. I don't understand your statement that you say the defendant noted an objection on the submitted instructions. Yes. And then you say, therefore, we should review for plain error. Normally, we review for plain error when there's not an objection and the objection is forfeited. Well, in this case, the objection was not... The specific nature of the objection was not to have the jury instruction conference on the record. So you're saying you don't think the notation that you say was on the proposed instructions is sufficient to preserve an objection? Well, I mean, that would be an ideal way to look at it, but given the fact that it did not note the specific nature and we are missing some part of the record, we are... You think that... ...going to plain error. I see. Okay. Go ahead. Well, what do you say is the error? Well, the error is that there should have been a specific finding that the jury had to make that Mr. Edwards was not only aware of what was reasonably foreseeable, but was specifically aware of the amounts of fentanyl involved in the offense. Because the evidence here shows that the failure to do that resulted in a substantial harm to him because the evidence was not clear that he was aware that the heroin that he was dealing involved fentanyl. And although the mandatory minimum is established in this case by other drugs, the specific finding with regard to fentanyl is significant in that it disqualifies Mr. Edwards for first-step contract relief, extra good time on his sentence. And so he is suffering a harm from this. And we ask the court to vacate that specific finding with regard to the fentanyl. And I will... I'm still not sure I understand why you're conceiving that this should be plain error review. I mean, if you've got an instruction that was submitted and it says right on the instructions conference was not transcribed... I was arguing this on plain error, frankly, out of an abundance of caution. And if the court wants to review it as a preserved error, I'm more than happy to accept that. I don't know what you mean by abundance of caution. But you could argue that it was preserved, but then as a fallback, even if it wasn't, you would argue there's plain error. But we'll sort it out. Thank you for your argument. Thank you, Your Honor. Mr. Nelson, we'll hear from you. Good morning, and may it please the Court, Nathan Nelson on behalf of the United States. Is it really correct that there's no transcript of the instructions conference? That is correct, Your Honor. I mean, was it reported so that there could be a transcript made? No, Your Honor. The instructions conference, and I'm going to briefly delve outside the record, I did reach out to the court reporter to see if a transcript could be made and one could not be made. It was not done. Well, is this like an informal discussion in the chambers, but then does the judge go on the record and solicit? It was in the courtroom. I was the trial attorney, Your Honor. It was in the courtroom, but it was not on the record. There is, after the district court read the final instructions to the jury, there, the district court did ask, other than previously stated on the record, are there any objections to my final instructions? Both parties at that time said, no, no objections to the final instructions. Other than previously stated? Other than previously stated on the record is the district court's language.  Prior to that point had been the defendant's objection to the knowledge of specific drug type that was noted. All right. So you actually say it was preserved then? I disagree that it was preserved. I think the defendant is correct. It should be reviewed for plain error because the precise grounds on which he is asserting error here, namely that it contravened Apprendi and his progeny and contravened Ray Haif, were not raised to the district court on the record and were not part of his objection. Therefore, the district court had no opportunity to analyze whether its instructions in any way contravened the Supreme Court's precedence in Apprendi and Ray Haif. So because the specific ground being asserted on appeal was not raised, it was essentially a naked objection, a bare objection without reasoning, plain error should apply. But what case says that that's insufficient? I think under the The judge, if the conference had been recorded and the defendant says, we object to this knowledge instruction, we don't agree it's not necessary for the government to prove these things. The government should have to prove them. We don't want the instruction. You're saying that's a forfeiture? I think the grounds being asserted here on appeal have been forfeited, namely the reliance on Ray Haif and Apprendi. Do we have a case that gets into that granular level and says you have to spell out the cases that you're relying on or whatever your position is here? I can't off the top of my head think of a case. However, I will note that I think the reasoning behind Rule 42 and the plain error review is the district court should be given an opportunity to take a first pass at some of these legal issues, help develop a record to assist in this court's review. That's true. I just wasn't sure how much specificity. Understood, Your Honor. But the government acknowledges that some type, I think they call it some type of argument, was raised about the some type of drug versus any kind of drug. But you agree that that's preserved? I agree that that's preserved. However, the district court's ultimate instruction that the defendant need not know the precise type of drug is a essentially direct recitation of this court's repeated precedence. And as I've noted in the brief, it's not only this court's precedence. It is every single circuit court of appeals in the United States and I think arguably also the United States Supreme Court, although in a different context, the McFadden case, which dealt with controlled substance analogs, and that is, I'm not sure if it's I can provide the citation for the court. That is 576 U.S. 186. The Supreme Court said that the ordinary meaning of Section 841 requires that a defendant know only that the substance he is dealing with is some unspecified substance listed in the federal drug schedules. So this court's Does that change, though, when the type of drug affects the penalty? And, you know, and therefore increases the maximum? This Court has said it does not. And that's the Shepard opinion as well as the Maxwell opinion, both of which say the government does not need to prove the precise type was known, only that the offense involved that particular type of drug. And that is drawn directly from the language of the statute. 841A makes it a crime for anyone to knowingly distribute, dispense a controlled substance. That's the criminalizing provision. 841B imposes certain penalties if, quote, the offense involves certain amounts of drugs. And this Court has always said that the knowledge of the particular drug type is not necessary to prove, for the government to prove, in order to implicate or invoke those penalty provisions. I'll note that the defendant's main reliance on appeal is the Ray Haif case. And there are two, I think, main reasons why Ray Haif is distinguishable here. One is that it's dealing with an entirely different statutory scheme. Ray Haif involved the 922 and 924 prohibitions on possession of firearms by certain people. And in that statute, the text said, it shall be a crime for whoever knowingly violates Section 922G. And the Supreme Court looked at that language and said, well, in this case, knowingly, by ordinary English grammar, applies to all the provisions of 922G, all the elements, essentially, both the possession of a firearm and the status that prohibits someone. And here, as I mentioned, the statutory text, the structure is different. The statute is very clear. The defendant need only knowingly distribute a controlled substance, not any particular drug. Then 841B, the penalty provision imposes certain penalties if the offense involves. And so in this case, the structures of those statutes are completely different. The second main prong of Ray Haif was this presumption in favor of a Sienta requirement. However, the Supreme Court was very clear that that presumption only applies when necessary to avoid criminalizing otherwise innocent conduct. And that risk is not applicable here, because the jury has already been required to find that the defendant knowingly dispensed, distributed, conspired to do so a controlled substance. They've already found inherently criminal conduct. So at this point, the provision in 841B isn't risking criminalizing any innocent conduct. The criminal conduct has already been established by his knowing distribution of a controlled substance. As I mentioned in my brief, every circuit, to my knowledge, to consider this, which is the First, the Fifth, the Sixth, and the Ninth, have all concluded that Ray Haif does not change the general rule that knowledge of a particular controlled substance type is unnecessary. And the Sixth and Ninth circuits in particular do a detailed analysis along the lines that I've just discussed. So given that this is, in the government and the defendant's view, plain error or view, I don't think the district court can be said to have plainly erred when all the relevant authority weighs against the defendant's requested jury instructions. And therefore, I ask the Court to affirm on that ground. A brief word on the other two issues raised by the defense counsel. I'll start with the sentencing. I don't believe the district court relied on any improper sentencing factor. The district court did reference the co-defendant, Ms. Johnson, as a, quote, victim. But it's important to understand the context in which the district court said that. The court called her a victim when expressing surprise that she had written a letter asking for leniency on his behalf. So the court was actually talking about mitigating factors, her request for leniency when referring to her as a victim. But in any case, she was, and the district court did not clearly err or plainly err otherwise in treating her as a victim or considering that factor, because the court found and the evidence showed that Ms. Johnson was a severe drug addict. The defendant was not an addict. What he did was he started by selling her heroin mixed with fentanyl, putting her very life at risk. And he then profited off her connections as a drug addict to make more money for himself by broadening his customer base. And he, in doing so, changed her from a drug addict to a Federal-level drug trafficker. And that was a tremendous detriment to her and her life. And then, finally, as the court has already touched on, he had her take on the personal  principal risk of this criminal conduct by having her be the one who stored all the drugs in order to protect himself. He used her apartment as essentially his stash house to keep the drugs away from him and away from his family. With respect, then, briefly, just to the chain of custody issue, here, in government's view, the district court did not plainly err or otherwise abuse its discretion in admitting the 4 kilograms of cocaine that were seized from the defendant. The agent clearly testified that they were the same drugs that had been seized from the defendant and that they were in a similar condition to when they were seized. The defendant did object on chain of custody grounds, but in doing so, he did not identify any proof or indication of alteration, tampering, bad faith on the part of police. And, in fact, to the contrary, the government offered extensive evidence of the chain of custody. For example, the government offered testimony of the case agent who found the cocaine. That finding was corroborated and documented by video evidence and contemporaneous photographs. It offered testimony of the officer who then escorted the cocaine from the roadside to the secure law enforcement center. We offered testimony of the agent who talked about, then, the drugs were removed from the car that had been towed to the law enforcement center, seized, weighed, photographed, field tested. We offered testimony of the agent who talked, then, about how the drugs were processed and labeled, that they were put in heat-sealed packaging, that they were assigned a unique number by the Olmstead County Sheriff's Office and a barcode to identify them, that they were initialed by the officers who were involved in that packaging and seizure, and that during this process, there was no tampering with these drugs of any sort. We also offered testimony about how the drugs were, then, safely stored in secured evidence lockers, that those lockers were accessible only to the evidence technicians. And then we offered testimony from the officer who checked those drugs out of those secure lockers and personally escorted them to the BCA laboratory. Finally, we offered testimony from the laboratory forensic scientist who testified generally about how drugs are secured, tracked, and processed at the lab, which includes another unique identifier, and then returned to the investigative agency after testing. So, as this Court has said, the government doesn't need to rule out tampering or alteration absolutely, just as a matter of reasonable probability. And the government easily met that standard here. And so, that standard being met, it was really up to the jury to decide what weight to give these drugs. In most cases, chain of custody is a question of weight, not The defense did cross-examine the agents somewhat substantially on the issues or alleged issues related to the chain of custody. The last thing I'll note is, with respect to all those steps that I just documented, I note that some of those, the evidence of some of those came in after the chain of custody objection. But if the Court looks at the Kimball decision cited in our brief, this Court has said that it will not reverse a defendant's conviction simply because full foundation or authentication was laid after the exhibit was admitted. So, in any case, given the fulsome record of a chain of custody of these drugs, the lack of any evidence of tampering or bad faith, it was really up to the jury to decide what weight to give these drugs. Unless the Court has any questions, that's all the argument I have. Thank you, Mr. Nelson. Thank you for your argument. Mr. Wright, we'll hear from you in rebuttal. If you wish. Very well. Thank you, Your Honor. Just briefly, the government points or tries to characterize the defendant's argument as one regarding the jury instruction and the amount of fentanyl and the requirement to make a specific finding just to the rehafe decision. And I would point out that a more on-point case is the Supreme Court's decision in Barrage v. United States, which dealt with 841 and the death results language of that statute. And because that specific finding increases the minimum and maximum penalties, it's an element to be submitted to the jury. And that case is more on point and does support the question about whether this fentanyl question should have been submitted to the jury, especially when I look at the government's brief and I do not see them addressing the factual question at all about the support for the fentanyl conviction, which is significant because the only basis for that came through the testimony of Chloe Johnson, who was not at all clear that Mr. Edwards was aware of the fentanyl. She knew about it because she was a user and she knew the difference between how heroin, how pure heroin, how the experience of doing heroin is different from the experience of doing heroin cut with fentanyl. And there was also testimony that fentanyl looks like heroin, that it was—and this was the government's own drug expert who came in and admitted, yes, fentanyl often looks like heroin. It is something that is used to cut heroin, to make it—to make poor The evidence does not support a finding regarding fentanyl with respect to Mr. Edwards in the same way that it does with his co-defendant, Ms. Johnson. And so unless the Court has more questions, I'll leave it at that. Very well. Thank you. Thank you, Your Honor.